Fritts v. Reidel.

---

No. 20,738.

V. A. FRITTS, *Appellant*, v. JOE REIDEL et al. (NICK ALBERS, *Appellee*).

### SYLLABUS BY THE COURT.

1. JUDGMENT—*Motion for, Sustained—Amended Answer Allowed—Judgment Set Aside.* Where a defendant is permitted to file an amended answer after his adversary's motion for judgment has been sustained, the granting of such permission is, in effect, an informal setting aside of the order sustaining the motion for judgment.

2. REDELIVERY BOND—*Fraud—Sufficient Pleading.* An answer pleading a defense to an action on a redelivery bond examined, and held sufficient against a motion for judgment.

3. REDELIVERY BOND — *Fraudulent Representations — Trial—Insufficient Instructions.* Where the terms of a written redelivery bond are simple and easily understood, and the defense sought to be made against it is one of fraud and misrepresentation in that the bondsman could not read, and that he had signed it in reliance on the explanation of its terms made to him by the agent of the party seeking to enforce it, and that the bond contained terms not explained to him, the trial court should instruct the jury that the evidence to maintain such a defense should be clear, decided and satisfactory (*Bank v. Reid*, 86 Kan. 245, 120 Pac. 339), and the ordinary stereotyped instruction that a "pre-

ponderance of the evidence" will defeat a recovery is insufficient where a more precise statement of the law of evidence relating to a defense based on allegations of fraud and misrepresentation to defeat a written instrument is requested.

Appeal from Sheridan district court; CHARLES I. SPARKS, judge. Opinion filed June 9, 1917. Reversed.

*John R. Parsons,* of Wakeeney, for the appellant.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a bond for the redelivery of a mare which the plaintiff had subjected to an attachment in an action before a justice of the peace. When the justice gave judgment for plaintiff the attached property was ordered to be delivered to the constable and sold. The mare was withheld and its delivery refused.

The defendant bondsman answered that he could not read the English language, and that he had signed the bond at the request of plaintiff's attorney, who at the time told him,

"All it will mean is that you simply stand as surety that this mare will be here at this place [the debtor's farm] on the day of the trial, next Wednesday. . . .

"That the defendant never knew until he was sued on said bond what said bond contained or what said bond meant; . . . that the said redelivery bond signed by him is entirely different from the said oral contract agreed upon by and between said attorney and agent of plaintiff as to what said bond was to contain and as to what said bond was to mean when reduced to writing; that after said oral contract was made as to what said bond was to mean as aforesaid, that the said attorney did willfully, fraudulently substitute an entirely different contract from the oral contract and agreement made before the signing of the said bond as to what the said bond when reduced to writing was to contain and was to mean, and that the defendant without any knowledge whatever of the said fraud on plaintiff's part signed said redelivery bond in good faith, relying on the honesty of the plaintiff's agent and attorney," etc.

The conditions of the bond were:

"Now we the undersigned are held and firmly bound to said constable in the sum of $500 that we will safely keep said property and return the same upon the close of the trial of the above entitled action if the same shall be ordered by said court, to be returned to said constable or his successors, if these conditions be performed then this bond be void, otherwise to remain in full force and effect."

The defendant prevailed. The plaintiff assigns errors.

Plaintiff first complains that the defendant was allowed to file a second amended answer, after plaintiff's motion for judgment had been sustained. While apparently no motion was filed to set aside the judgment, the defendant's application to file his answer alleged:

"That the said defendant has paid the cost ordered to be paid in said action and that this defendant has a good defense to this cause of action as set out in said defendant's amended answer which defendant prays leave to file now in this court. That this defendant has never delayed the trial of this cause of action on purpose or otherwise and is now ready and will go into trial of this action at this term of court if permitted to file his said amended answer."

It was on this showing that the defendant was permitted to file his second amended answer; and the permission thus given amounted to an order setting aside the court's previous order sustaining the motion for judgment already entered. This, in effect, was what was done—somewhat informal and perhaps irregular—but it does not rise to the gravity of reversible error. The court undoubtedly had power to set aside its previous order, and the allowance of belated pleadings was within its discretion. (*Bank v. Badders*, 96 Kan. 533, 152 Pac. 651.)

The second amended answer pleaded a defense sufficient to withstand the motion for judgment lodged against it. Plaintiff argues that defendant was presumed to know the law and his legal obligation thereunder. Very true, but the defendant was not bound by the terms of the bond and their legal consequences if he was misinformed of the extent of his obligation by plaintiff's attorney and relied thereon, and did not knowingly or understandingly sign the bond. Perhaps that was not true, but it can hardly be said that his plea did not raise at least a narrow issue of fact for the consideration of the jury, and it could not be arbitrarily overridden on a motion for judgment; nor would it have been proper for the court to usurp the jury's functions by directing a verdict.

Error is assigned on one of the instructions, the substance of which was that it devolved upon the defendant to show by a preponderance of the evidence that the contract [bond] sued on had been fraudulently substituted for another—the one explained to the defendant by the plaintiff's attorney; and that "if he did show by a preponderance of the evidence that the

contract sued on had been substituted fraudulently for another which he had meant to sign then the defendant was entitled to judgment."

Plaintiff contends that this instruction was wrong, that the court should have instructed the jury that the evidence of substitution should be clear, decided and satisfactory. The latter is the correct doctrine applying to cases where a defense of fraud is sought to be maintained against a written obligation signed by the party to be charged therewith. This phase of the law is fully discussed and the cases reviewed in *Bank v. Reid,* 86 Kan. 245, 120 Pac. 339. Counsel for plaintiff called the trial court's attention to this legal principle before the jury were instructed, and also on the motion for a new trial. (*Herrald v. Paris,* 89 Kan. 131, 130 Pac. 684.) The decisions in *Hockett v. Earl,* 89 Kan. 733, 133 Pac. 852, and *Hewey v. Fouts,* 91 Kan. 680, 139 Pac. 407, did not intend to modify the general and salutary rule that the consequences attaching to written obligations are not to be lightly sworn away by parol testimony. The terms of the redelivery bond were simple and easily understood. According to defendant's evidence pertaining to what plaintiff's attorney said to him in explaining the nature and terms of the bond, the most that could be said is that the explanation was a little crude and incomplete. There was not much more to the obligation than plaintiff's attorney explained to him. There was no showing that the defendant bondsman made even the slightest attempt to see that the terms of the bond—even so far as he did understand them—were complied with. So far as we can discern from the record, the defendant made default on the bond even to the extent he intended to be bound. The instruction given did not correctly define the extent of the burden devolving on the defendant before he could defeat his written obligation, and this court is in serious doubt about the justice of the net result. Therefore, the judgment is reversed and a new trial awarded.

Mr. Justice Porter holds that on the defendant's own evidence the statement of plaintiff's attorney was in substantial accord with the simple terms of the bond, that defendant established no defense, and that judgment should be ordered for plaintiff.