## The State of Kansas v. Vollie L. Smith.

1. Murder —*Preliminary Examination*—*Valid Judgment.* Upon the facts of this case, which are stated in the opinion, *held*, that a judgment in a criminal case, sentencing the defendant to imprisonment for murder in the second degree, cannot be reversed upon the ground that the defendant did not have any preliminary examination.

2. County Attorney, *Not an Attorney at Law.* Where a person has been regularly elected and has qualified as county attorney, and is in the possession and control of the office, and the district court recognizes him as such county attorney, and permits him to institute, carry on and conduct a criminal prosecution in such court, assisted, however, by a regularly-admitted attorney at law, and the defendant is convicted and sentenced, his sentence should not be set aside or reversed in the supreme court upon the ground merely that the county attorney was not a regularly-admitted attorney at law.

3. Evidence, *Newly Discovered.* Where alleged newly-discovered evidence is either not newly-discovered evidence, or the party producing it was culpably negligent in not discovering it, and it is cumulative, it will not require the granting of a new trial.

4. Instructions—*Character of Accused.* Where the trial court in a criminal prosecution has given ample and complete instructions to the jury with regard to the presumptions of innocence, and the prosecution has not attempted to attack the defendant's general character, and no evidence has been introduced with regard to his general character, *held*, that the trial court did not err in failing or refusing to give an instruction with regard to the defendant's character; and also *held*, that an instruction asked for by the defendant, stating that "the character of every defendant in a criminal case is conclusively presumed to be good," is too strong.

*Appeal from Ottawa District Court.*

Prosecution for murder in the first degree. From a conviction for murder in the second degree, defendant, *Smith*, appeals. The facts are stated in the opinion.

*J. G. Mohler*, for appellant:

The court erred in overruling the defendant's plea in abatement. There was no waiver of a preliminary examination. It, therefore, became necessary for the state to prove its case.

The ·murder is not charged as having been "willfully" done—the word "willful" is not used, nor any equivalent word; wherefore we claim the charge in the warrant is not murder in the first degree.

In Pennsylvania, the word "maliciously" has been held an equivalent for the word "willfully," in an indictment for **arson**. *Chapman v. Commonwealth*, 5 Whart. 427. If our contention is correct, the committing court could not "bind over" the defendant to answer for the crime of murder in the first degree, unless this court shall hold that the charge in the warrant has no relevancy to the investigation being had. See §§ 55, 68, 69, of the criminal code. The case of *Redmond v. The State*, 12 Kas. 172, was a civil action on a forfeited recognizance, and is not an authority on the proposition involved in this case. The prosecution in the district court was not instituted, carried on or conducted by any proper prosecuting officer, because E. A. Haldeman, who was elected to the office of county attorney of Ottawa county in 1890, never was and is not now a duly-admitted attorney at law. The office of county attorney is one created by statute, and the duties to be performed are specifically designated. Gen. Stat. of 1889, ¶¶ 1795–1798. The duties designated can be performed only by an attorney at law, who must be examined and found to be duly qualified, must take an oath and be duly enrolled as such attorney, and who thereby becomes and is an officer of the court, subject to its orders. Gen. Stat. of 1889, ¶¶ 388–405; 1 Bacon's Abr., title *Attorney;* 1 Comyn's Dig., title *Attorney;* 1 Bouvier's Law Dict., *Attorney at Law.* See, also, 2 Chitty, Gen. Pr., ch. 1, pp. 1–45; 3 Bl. Com. 26, *et seq.;* 1 Bish. Cr. Proc., § 278; Const. of Ind. 1851, art. 7, § 21; Gen. Stat. of 1889, ¶¶ 1801, 1803, 1805, 1807, 4190, 5130, 5153, 5174, 5166, 5167, 7281. The information in this case is signed "E. A. Haldeman, county attorney." We challenged his claim to being county attorney, and by his own evidence proved such a state of facts as made it impossible for him to be county attorney, and challenged his right to act as such, and challenged the sufficiency of the in-

formation, and the jurisdiction of the court by reason of said facts, and we claim the court erred in holding it had jurisdiction, in refusing to quash the information, and in ordering plea for defendant to be entered, and compelling the trial to proceed. *The State v. Tannahill*, 4 Kas. 117; *The State v. Nulf*, 15 id. 404; *Ex parte Garland*, 4 Wall. 378; *Ex parte Robinson*, 19 id. 505, 512.

The defendant made his objection to private counsel making the closing argument to the jury, demanding that such argument be made by the public prosecutor. . The court overruled this objection, on the authority of *The State v. Wilson*, 24 Kas. 189. The precise question here presented was not ruled in *The State v. Wilson*. The objection was not to assistance by private counsel, but to the making of the closing argument — which, in effect, we claim, gave private counsel control of the case. We think that the view taken by the supreme court of Michigan in *Meister v. The People*, 31 Mich. 101, should prevail in this case. All of the claimed newly-discovered evidence was material testimony in the case, and testimony which the defendant should have had an opportunity to present to the jury. The court below erred in giving certain instructions to the jury, and in refusing certain instructions asked for by the defendant; and in overruling his motions for a new trial, and in arrest of judgment.

*John N. Ives*, attorney general, and *E. A. Haldeman*, county attorney, for The State:

The overruling of the plea in abatement is in harmony with the repeated decisions of this court. *The State v. Tennison*, 39 Kas. 726, and cases therein cited. See Rapalje & L., Law Dict., p. 784.

E. A. Haldeman was the duly-elected county attorney of Ottawa county, and derived his authority as such officer from the same source as that of the district court. See *Clough v. Hart*, 8 Kas. 487. "The district court must always take judicial notice of the official character and identity of the public prosecutor." 5 U. S. Digest, First Series, 490, ¶¶ 151–163. The

county attorney is an officer of the district court, of which fact the court is bound to take judicial notice, and, under the doctrine laid down in *Clough v. Hart,* supra, the court has no right to ignore or question his authority. *Norvall v. Mc-Henry,* 1 Mich. 227; *Anderson v. Bell,* 9 Cal. 315; *The State v. Postlewait,* 14 Iowa, 446; *Mastenson v. La Clair,* 4 Minn. 163; *Thompson v. Haskell,* 21 Ill. 215.

It clearly appears in this case that the information was signed by the proper prosecuting officer. This was sufficient in this case. *The State v. Tannahill,* 4 Kas. 118. Section 110, criminal procedure, provides that no indictment or information may be quashed or set aside for any defect or imperfection which does not tend to prejudice the substantial rights of the defendant upon the merits.

We invite a careful review of the newly-discovered evidence, contending that no grounds were laid therein for a new trial.

After a careful examination of all the special instructions asked for by the defendant and refused by the court, and comparing them with the instructions given in this case, we think the court's instructions to the jury are free from error, at least reversible error, and the objections raised by counsel, except those relating to the instructions, are all technical, and if counsel were right in his contentions, these do not affect the substantial rights of the defendant; those asked being incorporated in the ones given, and containing fully and clearly the general propositions of law applicable to the case, it is not necessary to repeat them after once given. *The State v. Kearley,* 26 Kas. 77; *The State v. Peterson,* 38 id. 204; *The State v. Miller,* 35 id. 328; *Rauck v. The State,* 11 N. E. Rep. 450.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution upon information, in which the defendant, Vollie L. Smith, was charged with committing murder in the first degree in the killing of George Allen Wilson, on January 24, 1892. The defendant was tried, and convicted of murder in the second

degree, and was sentenced to imprisonment and hard labor in the penitentiary for the term of 13 years; and from this sentence he now appeals to this court.

The first complaint on the part of the defendant is that the court below erred in overruling the defendant's plea in abatement. By this plea, the defendant urges that he has never had any preliminary examination with regard to the offense charged in the information or the offense of which he was convicted; and this upon the ground that the original warrant, upon which he was arrested and upon which he had his preliminary examination, was not sufficient; and this upon the ground, as stated in his brief, that the killing "is not charged as having been '*willfully*' done. The word '*willfully*' is not used or any equivalent word," and "the word '*malicious*' is not used in the warrant." The warrant in fact, however, charges among other things as follows:

"One Vollie L. Smith did then and there unlawfully, feloniously, premeditatedly, and deliberately, with malice aforethought, with a pistol loaded with powder and leaden bullets, assault, shoot and wound one George Allen Wilson, then and there being, with the intent him, the said George Allen Wilson, then and there to feloniously kill, then and there giving to the said George Allen Wilson one mortal wound, from which mortal wound the said George Allen Wilson did then and there die."

Upon this warrant, the justice of the peace who issued it heard the evidence, and required the defendant to answer in the district court to the charge of murder in the first degree. The defendant then obtained a writ of *habeas corpus* from the judge of the district court, and such judge, upon the hearing, as the record shows, made the following finding and order:

"And the said judge, after having heard the evidence and the arguments of counsel, and being fully advised in the premises, finds, that the crime of murder in the first degree has been committed, and that there is probable cause for believing that the defendant, Vollie L. Smith, committed said crime. It is further ordered, that the said Vollie L. Smith be committed to the county jail of Ottawa county without

bail, to answer at the district court of said county for said crime."

None of the evidence introduced on the preliminary examination or on the hearing of the *habeas corpus* proceeding has. been brought to this court. It is hardly necessary to state anything further or any other facts with regard to this matter, or to make any comment. (See the cases of *The State v. Bailey*, 32 Kas. 83; *The State v. Tennison*, 39 id. 726.)

It is next claimed by the defendant that the whole proceeding in the district court was irregular and erroneous, for the reason that the prosecution was not instituted, carried on or conducted by any proper prosecuting officer. The information was filed and the prosecution carried on and conducted by E. A. Haldeman, as the county attorney of Ottawa county; and he was assisted at the trial by R. A. Lovitt, a regularly-admitted attorney at law. It is admitted by both parties that at the general election in 1890 Haldeman was duly elected county attorney of that county; that he duly qualified as such by taking the oath of office and giving bond, and that he took the possession of the office and has continued in the quiet and peaceable possession thereof ever since, and is generally recognized as the county attorney of Ottawa county. But it is claimed and admitted that Haldeman is not an attorney at law, and that he has never been admitted to practice as such in any of the courts of Kansas or elsewhere. Then is he a county attorney? Is he such *de facto* or *de jure*, or both or neither? And if he is a county attorney at all or in any sense or for any purpose, is he such or can he be such for the purposes of this prosecution? Can he perform all the duties of a county attorney, or may he perform only such of such duties as may be performed by county attorneys outside of all courts, and having no reference to judicial proceedings? Or, waiving all other questions, did the district court commit material and reversible error by recognizing Haldeman as the county attorney, having full power and authority as such in this case?

The statutes providing for the election or appointment of county attorneys do not prescribe their qualifications for the

purposes of the election or appointment, nor specify who shall be eligible or ineligible to be elected or appointed. There is no statute requiring that the person elected or appointed shall be an attorney at law; and many of the duties required of the county attorney have no reference whatever to courts or to judicial proceedings. Many of his duties consist in giving advice to the other officers of his county, and in enabling them to legally perform their duties. The only statutes which might, even by inference, seem to require that a county attorney should be an attorney at law are those statutes which provide for the admission of attorneys at law to practice in the courts. But these statutes do not mention county attorneys. These statutes provide for the admission of persons as attorneys at law who have read law for two years, the last year in a regularly practicing attorney's office, or who have been admitted as attorneys at law in some other state or territory. And when a person is admitted to practice law in any one of the district courts of the state, he is an admitted attorney at law in every other district court of the state and in all the inferior courts of the state, although no record of his admission exists anywhere except in the court where he was first admitted. Ordinarily, however, the courts will take judicial notice as to who are attorneys at law, wherever admitted in the state, and also as to who is the county attorney.

The statutes relating to county attorneys provide that it shall be their duty to appear in the several courts of their respective counties and prosecute or defend on behalf of the people all suits, applications, or motions, civil or criminal, arising under the laws of the state, in which the state or their respective counties are parties or interested. Now, what is the effect of these statutes? Will they have the effect to authorize a county attorney who is not an attorney at law to rightfully appear in the courts and prosecute or defend for his county? Or will they have the effect to absolutely vacate his office for the reason that he cannot so appear in the courts, and therefore cannot perform all the duties required of him by statute? Or may he perform all the duties of county at-

torney until the question is properly raised by *quo warranto*, or by some other direct proceeding? It has been the law in this state for many years, that if a county attorney shall neglect to perform any of the duties of his office he will forfeit his office. (*The State v. Foster*, 32 Kas. 14, 38; act relating to counties and county officers, § 180.) If a person is county attorney at all, it would seem that he should have the power to perform all the duties of his office. It is also provided by the statutes that a county attorney may appoint a deputy, and in the absence, sickness or disability of the county attorney and his deputy, the court may appoint an attorney to act as county attorney; and in case of a vacancy the judge of the district court may appoint a county attorney. May a county attorney, who is not an attorney at law, appoint a deputy who is an attorney at law, and give to such deputy full power and authority to perform all the duties of the office of county attorney in the courts and elsewhere? Or, where the county attorney is not an attorney at law, may the court consider that there is a *"disability"* on the part of the county attorney to perform his duties, and appoint an attorney to act as county attorney?

In the present case, the county attorney had an assistant who was a regularly-admitted attorney at law, who assisted the county attorney in the entire conduct of the case. The court permitted this assistant to act. Now may this assistant be considered as a *deputy*, appointed by the county attorney, with full power to act in the case, or *as an attorney appointed by the court*, with full power to act for the county attorney? It is claimed on the part of the prosecution that any person holding the office of county attorney, and recognized by the court and others as such, whether he is a regularly-admitted attorney at law or not, may institute and conduct any proceeding in the courts which, under the statutes defining the duties of county attorneys, a county attorney may lawfully institute or conduct. Is this correct? It is said that in the year 1890, in other counties than Ottawa, persons were elected

to the office of county attorney who were not attorneys at law; and it is also said that in the same year and the succeeding year one or more of the judges of the district courts of this state were elected who are not attorneys at law, and have not the requisite legal learning or qualifications to be admitted as attorneys at law, and yet that they are holding their respective offices, and performing the duties of judges of such district courts. We shall not decide all the questions which have been suggested or might be suggested with respect to the eligibility or power of county attorneys, who are not regularly-admitted attorneys at law, to appear and prosecute or defend for the public in the courts; but we shall simply decide the question whether any material and reversible error has been committed in this case upon the facts of the case. It is our opinion that where a person has been regularly elected and has qualified as county attorney, and is

2. County attorney, not an attorney at law. in the possession and control of the office, and the district court recognizes him as such county attorney, and permits him to institute, carry on and conduct a criminal prosecution in such court, assisted, however, by a regularly-admitted attorney at law, and the defendant is convicted and sentenced, his sentence should not be set aside or reversed in the supreme court upon the ground merely that the county attorney was not a regularly-admitted attorney at law.

The next objection urged by the defendant is, that the closing argument to the jury on the trial in this case was made by private counsel. Now it is a fact that the closing argument to the jury was made by an attorney at law who assisted the county attorney in the prosecution, and who was not the county attorney or his deputy, but we do not think that there was any error in this. (*The State v. Wilson*, 24 Kas. 189.) Such is a very common practice in Kansas in important criminal cases.

It is next claimed that the court below erred in overruling the defendant's motion for a new trial based upon the alleged

ground of newly-discovered evidence. There are many objections to this supposed newly-discovered evidence, and among them are these: It was either not newly-discovered evidence, or the defense was culpably negligent in not discovering it, and it was cumulative.

3. Evidence, newly discovered.

It is next claimed that the court below erred in giving and in refusing instructions to the jury. It is admitted by the defendant that he fired the fatal shot that killed the deceased, George Allen Wilson, but it is claimed by him that all that he did was done in self-defense, and that the firing of the fatal shot and the killing were purely accidental. Now the court below amply instructed the jury with respect to all these matters, and we think no substantial error was committed. We also think that the court below sufficiently instructed the jury upon every aspect and phase of the case. It is claimed, however, that the court below erred in refusing to give a certain instruction with regard to the defendant's character; but as the prosecution did not attempt to attack the defendant's general character, and as no evidence was introduced with regard to his general character, and as the instructions of the court with regard to presumptions of innocence were so ample and complete, we do not think that any material error was committed by such refusal. Besides, the instruction itself was too strong in saying that "the character of every defendant in a criminal case is *conclusively* presumed to be good."

4. Instructions —character of accus d.

We think we have now commented upon everything that requires comment. The original warrant upon which the defendant was arrested fairly indicated to him the offense with which he was charged. He had a preliminary examination, at which evidence was introduced. He had another hearing, upon an application made by him to be released upon a writ of *habeas corpus;* and he was again informed what he had to meet. The information filed in the district court was ample, and gave him full notice of the charge against him, and he had a fair trial in the district court.

**1. Murder—preliminary examination—valid judgment.** The evidence introduced on the trial justified the verdict; and the conflicting and contradictory evidence introduced on the motion for a new trial will not require that the verdict of the jury or the sentence of the trial court should be set aside, nor even give excuse for such a thing.

We think no substantial error was committed in the case, and the judgment of the court below will therefore be affirmed.

All the Justices concurring.